UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VERBY BURTON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:18-cv-00795-RDP |
| DRUMMOND COMPANY INC, | } |
| Defendant. | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion to Dismiss. (Doc. # 5). The Motion requires the court to decide whether it has subject matter jurisdiction over Plaintiff's claim and, if so, whether Plaintiff has stated a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). The court concludes the answer to both is yes. Thus, as more fully explained below, Defendant's Motion to Dismiss is due to be denied.

### I. Factual and Procedural Background

Plaintiff Verby Burton is the widow of a deceased coal miner, Allan Burton, who Defendant Drummond Company employed to work in its coal mines in Alabama. (Doc. # 1 at ¶¶ 8-12). Allan Burton died in 2015 from coal workers' pneumoconiosis, commonly known as black lung disease. (Doc. # 15 at 9).

Prior to his death, Allan Burton filed a claim for benefits under the Black Lung Benefits Act ("BLBA") with the Department of Labor ("DOL"). (Doc. # 1 at ¶ 13; Doc. # 15 at 4-7). After his death, Verby Burton filed an additional and separate claim for survivor's benefits under the Act. (Doc. # 1 at ¶ 14; Doc. # 15 at 11-12). The DOL granted both Allan and Verby Burton's

claims. (*Id.* at ¶¶ 15-22; Doc. # 15 at 24-55, 91-100). On Allan's claim, the DOL ordered Drummond to (1) pay $12,197.90 in retroactive benefits to Verby (on behalf of Allan) and (2) reimburse the Black Lung Disability Trust Fund $18,897.70 for interim benefits paid to Allan prior to his death. (Doc. # 15 at 54). On Verby's claim, the DOL ordered Drummond to (1) begin paying Verby monthly benefits of $644.50 per month and (2) reimburse the Trust Fund $12,832.40 for interim benefits paid to Verby beginning in April 2015, when the DOL initially determined she was eligible for benefits. (*Id.* at 99). In its compensation orders, the DOL informed Drummond that "by failing to initiate benefits . . . within 10 days of the date payment is due, [Drummond] may be subject to payments of additional compensation of up to 20% of the amount due," pursuant to 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607. (Doc. # 15 at 55, 100). The orders also explained that "failure to pay benefits as ordered may result in enforcement of the final award in Federal District Court" and that "[a]n appeal does not stay this penalty unless an Order staying payments has been issued by the Board or Court." (*Id.*).

Drummond declined to pay the benefits and instead appealed the decisions of the administrative law judges ("ALJs") to the Benefits Review Board. *See* 33 U.S.C. § 921(b); (Docs. # 1 at ¶ 26; 5-1 at 2-4). Drummond did not obtain an order staying payment of the benefits from the Board (Doc. # 1 at ¶ 24), so the compensation orders became effective, and payment became due, after the orders issued. 20 C.F.R. § 725.502(a)(1). Because Drummond failed to pay the benefits it owed Verby Burton during the pendency of its appeals, the Black Lung Disability Trust Fund began paying Verby Burton's benefits as provided for by statute, 26 U.S.C. § 9501(d)(1)(A), and the BLBA's implementing regulations, 20 C.F.R. § 725.522(a). (Doc. # 1 at ¶ 25).

The Benefits Review Board eventually affirmed in part and vacated in part the ALJ's

decision on Allan Burton's claim and remanded the claim to the ALJ. (Doc. # 15 at 106-12). On remand, the ALJ considered additional medical evidence as required by the Board's decision but again awarded benefits on behalf of Allan Burton. (*Id.* at 127-37). Drummond then withdrew its appeal of Verby Burton's claim based on its earlier concession that Verby would be automatically entitled to benefits if Allan's claim succeeded. (*Id.* at 139; Doc. # 5-1 at 3). The DOL's compensation order awarding benefits on Verby Burton's claim (Doc. # 15 at 99-100) became final after Drummond withdrew its appeal. The DOL also issued a new compensation order following the ALJ's decision on remand regarding Allan Burton's claim. (*Id.* at 142). That compensation order awarded the same benefits as the DOL's first compensation order on Allan Burton's claim—$12,197.90 in retroactive benefits to Verby Burton (on behalf of Allan) and a reimbursement of $18,897.70 to the Black Lung Disability Trust Fund for interim benefits paid to Allan prior to his death. (*Id.*). Once the compensation orders became final, Drummond paid all of the benefits listed in the final compensation orders and reimbursed the Trust Fund for compensation it had paid Verby Burton during the pendency of Drummond's appeals. (Doc. # 5-1 at 4).

On May 24, 2018, Verby Burton filed this action against Drummond seeking additional compensation and interest she claims Drummond owes her under the DOL's final compensation orders, pursuant to 33 U.S.C. § 914(f) and 20 C.F.R. § 725.607. Before addressing the merits of Ms. Burton's claim, the court first reviews the relevant statutory framework.

II.  **Federal Black Lung Program Statutory Framework**

The federal black lung program derives from several related statutes. In 1969, Congress enacted the Federal Coal Mine Health and Safety Act, Pub. L. No. 91-173, 83 Stat. 742 (1969) (codified as amended at 30 U.S.C. § 801 *et seq.*). Title IV of that Act established a benefits

program for coal miners who were totally disabled by pneumoconiosis and for the surviving dependents of miners who died from the disease. *See* 30 U.S.C. § 901. Congress has amended Title IV several times since it was enacted, including once in 1972 through the Black Lung Benefits Act, Pub. L. No. 92-303, 86 Stat. 150 (1972) and again in 1977 with the Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, 92 Stat. 95 (1978) (both codified as amended at 30 U.S.C. § 901 *et seq.*). At the same time it passed the 1977 Reform Act, Congress also passed the Black Lung Benefits Revenue Act of 1977, Pub. L. No. 95-227, 92 Stat. 11 (1978), which established the Black Lung Disability Trust Fund. The Trust Fund exists to pay benefits if no responsible coal mine operator can be identified or if the operator fails to pay benefits after they become due. 26 U.S.C. § 9501(d)(1); 20 C.F.R. §§ 725.1(c), 725.522(a).

Under the Black Lung Benefits Act ("BLBA") and its amendments, disabled miners or their surviving dependents may file benefits claims with the Secretary of Labor, who is responsible for processing the claims and awarding benefits where appropriate. *See* 30 U.S.C. §§ 902(c), 932(a); 20 C.F.R. § 725.1(a), (c). The Secretary is also responsible for promulgating the Act's implementing regulations. 30 U.S.C. § 932(a); 20 C.F.R. § 725.1(a). Individual coal mine operators are primarily liable for benefits, though, as explained above, the Trust Fund may pay benefits if no responsible operator can be identified or if the operator fails to pay benefits during the pendency of its appeal, after an initial finding of liability. 20 C.F.R. §§ 725.1(c), 725.522(a).

BLBA claims are first evaluated and adjudicated by a district director within the Department of Labor. *Id.* §§ 725.350(b), 725.401. If either a BLBA claimant or a mine operator is dissatisfied with the district director's determination of benefits, the party may request a hearing before an ALJ. *Id.* §§ 725.421, 725.451. Any party dissatisfied with an ALJ's decision

may appeal to the Benefits Review Board, and the Board's decisions are in turn reviewable by the U.S. Courts of Appeals. 33 U.S.C. § 921(b)-(c); 20 C.F.R. §§ 725.481, 725.482.

Various procedural and other provisions contained in the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, govern the adjudication of BLBA claims filed on or after January 1, 1974. *See* 30 U.S.C. § 932(a) (incorporating the LHWCA's provisions, subject to enumerated exceptions); 20 C.F.R. § 725.1(j). Among the provisions of the LHWCA incorporated into the BLBA are 33 U.S.C. §§ 914(f) and 921(d). This case turns on the operation of these two provisions.

Section 914(f) provides additional compensation for BLBA beneficiaries when an operator fails to timely pay an award, unless the operator appeals the award and obtains an order staying payment. Section 914(f) states:

> If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in [33 U.S.C. § 921] and an order staying payment has been issued by the Board or court.

33 U.S.C. § 914(f). The BLBA's implementing regulations provide that an award of benefits "shall be considered due after the issuance of an effective order requiring the payment of benefits by a district director, administrative law judge, Benefits Review Board, or court, notwithstanding the pendency of . . . an appeal to the Board or court." 20 C.F.R. § 725.502(a)(1). The only exception to this rule is "where the payment of such benefits has been stayed by the Benefits Review Board or appropriate court." *Id.* The regulations further provide that § 914(f)'s provision of additional compensation for late payments applies with equal force where an operator fails to timely pay an award and the Trust Fund pays the benefits in its stead. *See* 20 C.F.R.

§ 725.607(b).[1]

Notably, § 914(f) does not contain an independent enforcement mechanism. It does not, for instance, create a private right of action authorizing a BLBA beneficiary to sue in federal court to collect 20 percent additional compensation. This is where § 921(d) comes into play.

Section 921(d) provides a private cause of action for BLBA beneficiaries to enforce a final benefits award in federal court. Section 921(d) states:

> If any employer . . . fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred . . . . If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

33 U.S.C. § 921(d). Thus, § 921(d) grants BLBA beneficiaries the right to sue in federal court to enforce a final compensation order[2] making an award of benefits under the BLBA. A compensation order becomes "final" 30 days after it is filed in the office of the district director, unless a party appeals the order. 33 U.S.C. § 921(a).

Plaintiff's claim presents the court with two issues. The first is whether a BLBA beneficiary who is owed 20 percent additional compensation under § 914(f) may obtain that additional compensation directly through an action in federal court under § 921(d) to enforce a final compensation order, or whether such a beneficiary must first obtain a supplemental order from the DOL awarding it the 20 percent additional compensation. The second is whether a

---

[1] 20 C.F.R. § 725.607(b) provides: "If, on account of an operator's or other employer's failure to [timely] pay benefits . . . , benefit payments are made by the fund, the eligible claimant will nevertheless be entitled to receive [additional compensation under § 914(f)] with respect to all amounts paid by the fund on behalf of such operator or other employer."

[2] "Compensation order" is defined by the LHWCA as "[t]he order rejecting the claim or making the award." 33 U.S.C. § 919(e). Section 919(e) is among the LHWCA provisions incorporated into the BLBA. *See* 30 U.S.C. § 932(a).

6

BLBA beneficiary has a right to additional compensation under § 914(f) where a responsible operator failed to timely pay compensation owed under the terms of an award but the Trust Fund timely paid the compensation in the operator's stead.

### III. Analysis

Drummond argues Ms. Burton's claim should be dismissed because this court lacks subject matter jurisdiction over it and because Ms. Burton has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). For the reasons explained below, the court concludes both that it has subject matter jurisdiction and that Ms. Burton has stated a claim.

#### A. The Court Has Subject Matter Jurisdiction Over Ms. Burton's Claim

Drummond makes three arguments to support its Rule 12(b)(1) motion to dismiss: that Ms. Burton lacks Article III standing, that no federal statute confers subject matter jurisdiction over Ms. Burton's claim, and that Department of Labor regulations deprive this court of jurisdiction over Ms. Burton's claim. The court disagrees, and addresses each argument in turn.

##### 1. Ms. Burton Has Article III Standing

Drummond argues Ms. Burton lacks Article III standing because she was timely paid all benefits owed to her under the BLBA, either by Drummond or the Trust Fund, and thus has suffered no injury in fact. But that is obviously wrong. Ms. Burton's claimed injury in this lawsuit is not that she failed to receive the benefits she was initially awarded by the DOL but that she has failed to receive the 20 percent additional compensation she has a right to under § 914(f). Assuming Ms. Burton has a right to additional compensation under § 914(f) (an issue the court will return to below), there is no doubt that Drummond's failure to pay her that additional compensation creates Article III standing. *See Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1263 (11th Cir. 2006) (holding that economic harm constitutes an injury in fact).

## 2. Ms. Burton's Claim Is Properly Brought Under 33 U.S.C. § 921(d)

Drummond's second argument is a closer call. Drummond argues the court lacks subject matter jurisdiction over Ms. Burton's claim because § 921(d) only authorizes district courts to enforce "a compensation order making an award, that has become final." 33 U.S.C. § 921(d). Here the DOL has not issued any order awarding Ms. Burton the 20 percent additional compensation she seeks under § 914(f), let alone one that has become final. Thus, Drummond argues Ms. Burton must first obtain a supplemental order from the DOL awarding her additional compensation under § 914(f) before seeking to enforce her right to such compensation via a § 921(d) action in federal district court. This is an issue of first impression in the Eleventh Circuit.

Drummond is correct that § 921(d) only authorizes district courts to enforce existing final compensation orders issued by the DOL; it does not authorize district courts to make their own independent awards of benefits under the BLBA. That much is explicit in the statute's text, which provides that a BLBA beneficiary "may apply for the enforcement of *the order* to the [appropriate] Federal district court." 33 U.S.C. § 921(d) (emphasis added). "[T]he order" refers to the "compensation order making an award, that has become final" mentioned earlier in § 921(d). *Id.*

It is also true that § 914(f) does not create a private cause of action by which BLBA beneficiaries may enforce their right to additional compensation under that statute. The statute grants BLBA beneficiaries a substantive right to additional compensation under certain circumstances, but it creates no mechanism to enforce that right. *See* 33 U.S.C. § 914(f). Because the text of § 914(f) neither expressly supplies nor clearly implies a private right of action, this court may not create one. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("Raising up

causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.").

Finally, it is also undisputed in this case that the DOL has not issued any order awarding Ms. Burton the 20 percent additional compensation she seeks under § 914(f). The only final compensation orders the DOL has issued in this case are its final order on Verby Burton's claim for survivor's benefits[3] and its final order on Allan Burton's disability claim.[4] Neither of those orders expressly awarded Ms. Burton additional compensation under § 914(f) (though they did state Ms. Burton would be eligible for § 914(f) additional compensation if Drummond failed to timely pay her benefits). (Doc. # 15 at 99-100, 142).

However, it does not follow from these premises that Ms. Burton may not collect any additional compensation owed to her under § 914(f) through a § 921(d) action in federal court. To understand why this is so, one must pay careful attention § 914(f)'s text. Section 914(f) does not give a beneficiary the right to an *additional* award of benefits equal to 20 percent of the compensation that was not timely paid under a previous award. (Were that the case, a BLBA beneficiary *would* be required to seek a supplemental order from the DOL granting it that additional award before seeking to enforce the award through a § 921(d) action in federal court.) Rather, § 914(f) simply increases the amount of compensation owed under an *existing* award of benefits. *See* 33 U.S.C. § 914(f) ("If any *compensation*, payable under the terms of *an award*, is not paid within ten days after it becomes due, there shall be *added to* such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid *at the same time as*, but *in*

---

[3] The DOL issued its last order on Verby Burton's claim on December 5, 2016 (Doc. # 15 at 99-100), and the order became final (at the latest) on October 22, 2017 (30 days after Drummond withdrew and dismissed its appeal of the claim). *See* 33 U.S.C. § 921(a); (Doc. # 15 at 139).

[4] The DOL issued its last order on Allan Burton's claim on October 5, 2017 (Doc. # 15 at 142), and it became final on November 4, 2017. *See* 33 U.S.C. § 921(a).

9

*addition to*, such compensation.") (emphasis added). In this action, Ms. Burton seeks to enforce two final compensation orders pursuant to § 921(d). Thus, if the compensation Drummond was ordered to pay in the DOL's final compensation orders was compensation "payable under the terms of an award," and if Drummond failed to pay that compensation "within ten days after it [became] due," then § 914(f) automatically "added to" such compensation "an amount equal to 20 [percent] thereof." *Id.* By virtue of Drummond's failure to timely comply with the two orders and the effect of § 914(f), the amount of compensation Drummond owes Ms. Burton under the final compensation orders is 20 percent more than the amounts listed on the face of the orders. It is for this reason that some courts have referred to § 914(f) as "self-executing" or "automatic." *See Combs v. Elkay Min. Co.*, 881 F. Supp. 2d 728, 732 (S.D.W. Va. 2012) (collecting cases); *Byrge on behalf of Estate of Byrge v. Premium Coal Co. Inc.*, 301 F. Supp. 3d 785, 797-98 (E.D. Tenn. 2017) (same).

The two final compensation orders Ms. Burton seeks to enforce in this case are the final orders issued on Ms. Burton's survivor claim and Mr. Burton's disability claim. The DOL issued its final compensation order on Ms. Burton's claim on December 15, 2016 and ordered Drummond to pay Ms. Burton monthly compensation in a specified amount and to reimburse the Trust Fund for interim payments it made to Ms. Burton. (Doc. # 15 at 99). That compensation was "payable under the terms of an award,"—namely, the December 15, 2016 final compensation order. *See* 33 U.S.C. § 914(f). Drummond failed to pay that compensation "within ten days after it [became] due," *id.*; *see also* 20 C.F.R. § 725.502(a)(1), and instead chose to appeal the award. Similarly, the DOL issued its final compensation order on Mr. Burton's claim on October 5, 2017 and ordered Drummond to pay Ms. Burton retroactive benefits on behalf of Mr. Burton and to reimburse the Trust Fund for interim payments it made to Mr. Burton. (Doc.

# 15 at 142). That compensation was likewise "payable under the terms of an award,"—namely, the earlier December 29, 2015 compensation order (Doc. # 15 at 54-55) that initially granted Mr. Burton's claim, which Drummond then (unsuccessfully) appealed. Yet again, Drummond failed to timely pay the compensation due under the December 29, 2015 compensation order and instead chose to appeal.

Thus, once Drummond was late in paying Ms. Burton the compensation it owed her under the December 29, 2015 and December 5, 2016 compensation orders, the language of § 914(f) operated to add 20 percent additional compensation to the amount Drummond owed. This was purely by operation of law, and it is of no consequence that the DOL's final orders do not themselves award Ms. Burton additional compensation under § 914(f). Indeed, § 914(f) does not by its terms require any action by the Secretary to make its increase in the amount of compensation owed effective. Rather, the statute simply "add[s] to" an operator's outstanding debt 20 percent additional compensation as soon as the debt is ten days past due. 33 U.S.C. § 914(f). Because the DOL's compensation orders have "become final," 33 U.S.C. § 921(d), Ms. Burton is entitled to enforce those orders in federal district court and collect the full amount of compensation Drummond owes her under the orders, including the 20 percent additional compensation § 914(f) added to the amount Drummond owes.

### 3. Department of Labor Regulations Do Not Divest This Court of Jurisdiction Over Ms. Burton's Claim

Finally, Drummond also argues that the BLBA's implementing regulations required Ms. Burton to obtain a supplemental order awarding additional compensation under § 914(f) before bringing this action. Specifically, Drummond points to the regulation codified at 20 C.F.R. § 725.601(b), which states: "In all cases payments of additional compensation . . . will be sought by the Director or awarded by the district director."

The court notes that 20 C.F.R. § 725.601(b) does not by its terms prohibit a beneficiary from seeking § 914(f) additional compensation in federal court. Rather, it simply states the DOL's policy that, in cases of additional compensation, the agency itself will seek or award the compensation. Because § 921(d) permits either a "beneficiary" or "the deputy commissioner"[5] to enforce a final compensation order, 20 C.F.R. § 725.601(b) likely was not meant to foreclose a beneficiary from seeking additional compensation in a § 921(d) action if the agency fail to do so.

But whatever the import of 20 C.F.R. § 725.601(b), an administrative agency's regulations cannot deprive a district court of jurisdiction that Congress has vested in it by statute. Congress has vested district courts with jurisdiction of all civil actions arising under the laws of the United States, 28 U.S.C. § 1331, and it has created a cause of action by which BLBA beneficiaries may enforce final compensation orders in federal court, 33 U.S.C. § 921(d); 30 U.S.C. § 932(a). If Ms. Burton's claim for additional compensation under § 914(f) falls within the scope of § 921(d) (and, as explained above, the court concludes it does), then the court has jurisdiction over Ms. Burton's claim. Because Congress has vested this court with jurisdiction over Ms. Burton's claim by statute, the DOL's regulations cannot divest it of jurisdiction, even assuming the agency intended that result. The court thus concludes it has subject matter jurisdiction over Ms. Burton's claim.

### B. Ms. Burton Has Stated a Claim for Relief

Drummond also argues this case should be dismissed because Ms. Burton has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Specifically, Drummond claims Ms. Burton has no right to additional compensation under § 914(f) because

---

[5] Though LHWCA provisions refer to this official as the "deputy commissioner," the Department of Labor has renamed this official the district director. 20 C.F.R. § 725.101(a)(16).

she was timely paid all of the compensation owed to her.[6] Again, this is an issue of first impression in the Eleventh Circuit.

Section 914(f) provides for additional compensation "[i]f any compensation, payable under the terms of an award, *is not paid* within ten days after it becomes due." 33 U.S.C. § 914(f) (emphasis added). It is undisputed that Drummond did not pay the compensation it owed Ms. Burton within ten days after it became due. But Drummond argues that, because the Trust Fund *did* pay Ms. Burton's benefits during the pendency of Drummond's appeals, the compensation *was paid* within ten days after it became due (even if not by Drummond), and Ms. Burton therefore has no right to additional compensation under the statute.

Section 914(f)'s use of the passive-voice phrase "is not paid" complicates what would otherwise be a straightforward exercise in statutory interpretation. As the inimitable grammarian Bryan Garner has explained, the passive voice often "fails to say squarely who has done what" making it "a prime source of unclarity." Bryan A. Garner, *Garner's Modern American Usage* 592 (2d ed. 2003). Here, § 914(f)'s passive-voice phrase "is not paid" invites the question, not paid *by whom*? Does § 914(f) mandate additional compensation when "compensation, payable under the terms of an award" is not paid *by anyone*? Or does it require additional compensation whenever an award is not paid *by the responsible operator*, even if some other entity (like the Trust Fund) does pay the benefits? The statute does not expressly say one way or the other.

A passive-voice construction like "is not paid" *can* mean that the actor -- here, the one

---

[6] Drummond also argues that the Secretary of Labor unlawfully departed from § 914(f) in promulgating 20 C.F.R. § 725.607(b) (which authorizes additional compensation even where the Trust Fund pays a claimant's benefits) and that the regulation is therefore arbitrary, capricious, and unenforceable in this case. The court need not address this argument for two reasons. First, because Ms. Burton is not seeking to enforce an agency award of 20 percent additional compensation pursuant to 20 C.F.R. § 725.607(b), the court questions whether Drummond has standing to challenge the regulation as arbitrary and capricious. Simply put, because the agency has taken no action pursuant to the regulation, Drummond has not been "injured" by operation of the regulation. Second, even if Drummond could properly challenge the regulation in this lawsuit, the court would find that it is not inconsistent with § 914(f). As explained below, § 914(f) provides beneficiaries with additional compensation when an operator fails to timely pay an award of benefits, even when the Trust Fund pays benefits in the operator's stead.

who does the paying -- is either unimportant or unknown. *See* Garner, *supra*, at 593. But the passive voice need not and does not always mean that the identity of the relevant actor is indeterminate or unimportant. "To the contrary, despite the passive voice, [a text's] grammatical and structural logic often point to particular, identifiable . . . actors." Nicholas Quinn Rosenkranz, *The Objects of the Constitution*, 63 Stan. L. Rev. 1005, 1012 (2011). Consider, for example, Article I, Section 9 of the Constitution, which provides that "No Bill of Attainder . . . *shall be passed*." U.S. Const. art. I, § 9, cl. 3 (emphasis added). Like § 914(f), Article I, Section 9 invites the question, shall be passed *by whom*? Does that constitutional provision only forbid the *federal* government from passing bills of attainder, or does its passive-voice phrasing mean it also prohibits *state* governments from passing bills of attainder? The text does not say expressly, but that does not mean the question is hopelessly indeterminable. Chief Justice Marshall tackled this very question in *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243 (1833) in the course of resolving a dispute about another passive-voice constitutional provision, the Takings Clause. He began by looking to grammatical and contextual clues in other provisions of the Constitution that could shed light on Article I, Section 9's passive-voice prohibition on bills of attainder. As it turns out, "the very next section of the Constitution includes a clause identical in subject matter but different in *subject*: 'No *State* shall . . . pass any Bill of Attainder, [or] ex post facto Law . . . .'" Rosenkranz, *supra*, at 1013 (quoting U.S. Const. art. I, § 10, cl. 1) (emphasis, omissions, and alteration in original). Chief Justice Marshall thus "reasoned that the passive-voice version of this clause must not restrict states, because otherwise the active, 'No State shall' version would be superfluous." *Id.* (citing *Barron*, 32 U.S. (7 Pet.) at 248-49). As Marshall's careful reasoning demonstrates, a text's internal grammar, structure, and logic can meaningfully resolve ambiguities created by the passive voice.

Just as a nearby constitutional provision clarified the meaning of Article I, Section 9's passive-voice prohibition on bills of attainder in *Barron*, § 914(f)'s surrounding statutory context similarly clarifies its meaning. That context reveals that § 914(f) supplies additional compensation whenever compensation due under an award is not timely paid *by the responsible operator*, even if some other entity (like the Trust Fund) does in fact timely pay the benefits. Several features of § 914(f)'s statutory context dictate this conclusion.

First, the text of § 914(f) itself suggests that additional compensation is available whenever a responsible operator fails to timely pay an award of benefits. The statute speaks of compensation that is "payable under the terms of an award" and "is not paid within ten days after it becomes due." 33 U.S.C. § 914(f). The most natural reading of the text is that the person responsible for paying compensation "within ten days after it becomes due" is the person identified by the "terms of [the] award," not some other person who is not even mentioned in the award's terms. *Id.* Here, the terms of the two awards Ms. Burton received expressly instructed Drummond (not the Trust Fund) to pay Ms. Burton's benefits. (Doc. # 15 at 54, 99). Because Drummond failed to pay Ms. Burton's benefits while it appealed the ALJs' decisions, the compensation "payable under the terms" of the awards against Drummond was "not paid" within the meaning of § 914(f), even though Ms. Burton received compensation from the Trust Fund while Drummond's appeals were pending.

Second, it is important to remember that § 914(f) was originally enacted as part of the Longshore and Harbor Workers' Compensation Act ("LHWCA") in 1927, and only some forty years later (in 1969) incorporated by reference into Title IV of the Federal Coal Mine Health and Safety Act. *See* Pub. L. No. 91-173, § 422(a), 83 Stat. 742, 796 (1969) (codified as amended at 30 U.S.C. § 932(a)) (incorporating various provisions of the LHWCA, including § 914(f)).

Notably, the LHWCA did not create a trust fund to pay LHWCA benefits when a responsible employer failed to do so. In the LHWCA context, the *only* potential payer of benefits is the responsible employer. At least in the LHWCA context, then, § 914(f)'s phrase "[i]f any compensation . . . is not paid" *must* mean "if any compensation is not paid *by the responsible employer*"—the only entity conceivably responsible for paying compensation under the LHWCA. To give § 914(f) a different interpretation in the BLBA context, one would have to conclude that Congress, by incorporating § 914(f) into the BLBA, changed the meaning of the statute without changing its words. The court concludes that Congress did no such thing.

Had Congress simultaneously incorporated § 914(f) into the BLBA and created the Black Lung Disability Trust Fund, there might be an argument that Congress changed the meaning of § 914(f) without changing its words. Such an argument would go as follows: By creating the Trust Fund, which compensates BLBA beneficiaries when responsible operators fail to do so, Congress established another entity potentially responsible for paying BLBA benefits that simply was not present under the LHWCA. Under the LHWCA, it was perfectly reasonable to read § 914(f)'s phrase "[i]f any compensation . . . is not paid" to mean "if any compensation is not paid *by the responsible employer*"—since the responsible employer was the only entity that had any business paying compensation under the LHWCA. But since Congress has now established another entity potentially responsible for paying BLBA benefits (the Trust Fund), § 914(f)'s phrase "[i]f any compensation . . . is not paid" should arguably (in the BLBA context) be understood to mean "if any compensation is not paid by the responsible employer *or the Trust Fund*."

But this is all merely academic because Congress *did not* simultaneously incorporate § 914(f) into the BLBA and create the Black Lung Disability Trust Fund. To be sure, those two

events were separated by some eight years. Congress incorporated § 14(f) of the LHWCA (codified as amended at 33 U.S.C. § 914(f)) into Title IV of the Federal Coal Mine Health and Safety Act in 1969. *See* Pub. L. No. 91-173, § 422(a), 83 Stat. 742, 796 (1969) (incorporating by reference Pub. L. No. 69-803, § 14(f), 44 Stat. 1424, 1433 (1927)). Eight years later, Congress passed the Black Lung Benefits Revenue Act of 1977, creating the Black Lung Disability Trust Fund. *See* Pub. L. No. 95-227, § 3(a), 92 Stat. 11, 12 (1978) (creating the fund). Thus, when Congress incorporated § 914(f) into the BLBA, the provision was doubtless understood to have the same meaning it bore under the LHWCA. Accordingly, there can be no argument that Congress silently changed the meaning of § 914(f) when it incorporated the provision into Title IV of the Federal Coal Mine Health and Safety Act of 1969, as the Trust Fund was not created until more than eight years later.

Nor can there be any argument that the creation of the Trust Fund in 1977 silently changed the meaning of § 914(f) in BLBA cases. On this silent-amendment theory, the creation of the Trust Fund would have relieved operators of significant liability under § 914(f), since they would never be liable for additional compensation so long as the Trust Fund timely paid benefits in their stead. But the statute creating the Trust Fund refutes that theory by providing that "nothing in this section shall affect the rights, duties, or *liabilities*, of any operator in proceedings under [30 U.S.C. § 932[7]]." Pub. L. No. 95-227, § 3(d), 92 Stat. 11, 14 (1978) (codified as amended at 30 U.S.C. § 934(b)(1)(B)) (emphasis added). In short, the phrase "is not paid" in § 914(f) means the same thing under the BLBA that it meant under the LHWCA: not paid *by the responsible operator*. Unless a responsible operator appeals an award of benefits and obtains an order staying payment of the benefits, beneficiaries are entitled to 20 percent additional

---

[7] Title 30 U.S.C. § 932 is the provision of the BLBA that incorporates various LHWCA provisions, including § 914(f).

compensation whenever the operator fails to pay compensation "payable under the terms of an award" "within ten days after it becomes due." 33 U.S.C. § 914(f). Thus, Ms. Burton has alleged facts sufficient to raise her right to relief under § 914(f) "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Drummond's motion to dismiss for failure to state a claim is accordingly due to be denied.

## IV. Conclusion

After careful review, the court concludes that Defendant's Motion to Dismiss (Doc. # 5) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

DONE and ORDERED this October 12, 2018.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE